IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EAGLE EXPRESS LINES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 22-cv-03747 |
| ) | |
| ) | Hon. LaShonda A. Hunt |
| UNITED STATES OF AMERICA; PETE ) | |
| BUTTIGIEG, Secretary of the United States ) | |
| Department of Transportation; and the ) | |
| FEDERAL MOTOR CARRIER SAFETY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit by Plaintiff Eagle Express Lines, Inc. arises from a fatal vehicle crash caused by one of its drivers who received a false medical certificate from a medical examiner on the national registry administered by the Federal Motor Carrier Safety Administration ("FMCSA") and United States Department of Transportation ("USDOT"). Plaintiff seeks relief against Defendants under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, asserting that USDOT and FMCSA (collectively, "the federal agencies") negligently failed to comply with their statutory duties to police medical examiners.[1] Before the Court is the motion of Defendant United States of America to dismiss the complaint. For the reasons discussed below, the motion [21] is granted in part and denied in part.

---

[1] Only the United States is a proper defendant in an action alleging negligence by federal agencies. *See Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008).

1

## BACKGROUND

Plaintiff was a commercial trucking company incorporated in Illinois that engaged in interstate commerce and was licensed as an interstate motor carrier by FMCSA, "an operating administration" of the USDOT. (Dkt. 1 at ¶¶ 2-3, 6). In February 2016, Steve Holland ("Holland") applied to drive commercial vehicles for Plaintiff. (*Id.* at ¶ 11). As a motor carrier, Plaintiff was legally required to maintain a driver qualification file for Holland, which included a Medical Examiner's certificate. (*Id.* at ¶ 34). Unbeknownst to Plaintiff, Holland had heart bypass surgery in 2010. (*Id.* at 2). However, Holland completed medical forms indicating that he had not had heart disease, a heart attack, or another cardiovascular issue. (*Id.* at ¶¶ 12-16). Dr. Darrin Frye certified Holland as qualified for a 2-year medical certificate. (*Id.* at ¶19).

In February 2018, Holland underwent a subsequent medical examination by Ronald Sherry, P.A. ("P.A. Sherry") at the Health Care Centers of Miami. (*Id.* at ¶ 25). Once again, Holland falsely indicated on his medical forms that he had no prior heart issues or surgeries. (*Id.* at ¶¶ 26-29). Had P.A. Sherry performed the required examination of twelve body systems, Holland would have had to remove his shirt, "at which time the scar from his open-heart surgery performed in 2010 would have been visible," thereby requiring "a more thorough examination, obtain[ing] prior medical records, and likely certify[ing] Holland to operate commercial vehicles for a shorter time period, if at all." (*Id.* at ¶ 31). Despite having failed to adequately examine Holland, P.A. Sherry signed a false medical certificate on February 12, 2018, clearing Holland to drive for two years. (*Id.* at ¶¶ 32-33). Both Dr. Frye and P.A. Sherry were listed on the National Registry of Medical Examiners. (*Id.* at ¶¶ 12, 25).

A regulatory review conducted by FMCSA for the period from May 2014 to November 2016 revealed that P.A. Sherry "submitted approximately 4 times more Medical Examiner

Certificates than the next highest FMCSA certified Medical Examiner in the State of Florida." (*Id.* at ¶ 55). Due to this anomalous activity, the USDOT Office of the Inspector General, Miami Division, launched a further investigation of P.A. Sherry and discovered that in 2016 and 2017, he had conducted 10 times more medical examinations than the national average. (*Id.* at ¶¶ 56-57). Accordingly, USDOT-OIG arranged a sting, and in July 2018, an undercover officer visited P.A. Sherry at the Health Care Center of Miami for a purported medical examination. (*Id.* at ¶¶ 58-59). P.A. Sherry's examination consisted of nothing more than placing a stethoscope on the undercover officer's chest and asking him to breathe in and out, after which P.A. Sherry certified that the examination "was performed in accordance with FMCSA Regulations and that all recorded information was accurate." (*Id*. at ¶ 60). In November 2019, Sherry was indicted in the United States District Court for the Southern District of Florida for his role in issuing false medical certificates. (*Id.* at ¶ 47). The USDOT did not publicly announce P.A. Sherry's criminal activity until his indictment, well over a year after the undercover sting. (*Id*. at ¶ 47).

In January 2019, almost a year before the indictment, Holland suffered a fatal heart attack while driving a tractor-trailer owned by Plaintiff in Alachua County, Florida, and tragically crashed into multiple vehicles, killing five children traveling in a church van as well as another tractor-trailer driver. (*Id.* at ¶¶ 38-43). In connection with that accident, Plaintiff has paid over $30 million in settlements and several lawsuits remain pending. (*Id.* at ¶¶ 73-75).

Plaintiff alleges that "[k]nowing many thousands of commercial truck drivers were issued phony medical certificates, the Defendants had an obligation and a duty to inform motor carriers that those unqualified drivers were in their employ and afford them an opportunity to remove those drivers from services to protect the monitoring public." (*Id*. at ¶ 47). Plaintiff therefore filed this FTCA complaint alleging indemnification (Count I), negligence based on *respondeat superior*

3

(Count II), negligence based on duty to warn (Count III), negligence *per se* (Count IV), and contribution (Count V). Defendant has moved to dismiss the complaint for lack of jurisdiction, contending that the circumstances alleged here do not give rise to liability under the FTCA. The motion is fully briefed and ready for resolution.

## DISCUSSION

### I. Legal Standard

Motions to dismiss for lack of subject matter jurisdiction are proper under Fed. R. Civ. P. 12(b)(1). Many of the arguments raised by Defendant in its motion appear to attack the merits of Plaintiff's claims, which would normally be considered under Fed. R. Civ. P. 12(b)(6). But the FTCA "creates a unique context where a jurisdictional analysis under Rule 12(b)(1) and a merits analysis under Rule 12(b)(6) motion may be identical." *Heiderman v. United States*, 20 C 7579, 2021 WL 5988556, at *2 (N.D. Ill. Dec. 17, 2021) (citing *Scholz v. United States*, 18 F. 4th 941 (7th Cir. 2021)). "Accordingly, in the FTCA context, a motion attacking an element of jurisdiction that is also a merits element may be decided under either Rule 12(b)(1) or Rule 12(b)(6)." *Id.*

The focus of an FTCA jurisdictional challenge is whether the case presents "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Defendant argues that standard is not met here, as the complaint alleges only "noncompliance with [FMCSA's] *federal law* duties [which] cannot be analogized to any *state law* tort." (Dkt. 22 at 7) (emphasis in original). The Court disagrees.

### II. Choice of Law

Before turning to the substantive issues raised in Defendant's motion, the Court must determine what state law to apply. The first step in the analysis is to decide which forum's choice-

4

of-law jurisprudence to use, based on the "whole law" "of the place where the act or omission occurred." *See Richards v. United States*, 82 S. Ct. 585, 591-92 (1962). The thrust of Plaintiff's complaint is that the federal agencies did not timely warn Plaintiff about P.A. Sherry's scheme to churn out thousands of fraudulent medical certifications for truck drivers, including Holland. It is clear that all relevant activity related to the acts and omissions that make up this case took place in Florida—Holland's medical examination was performed by P.A. Sherry in Florida, the USDOT-OIG investigation was conducted by the Miami field office, the undercover agent met with P.A. Sherry in Florida, and the crash occurred in Florida. Therefore, the Court concludes that Florida choice-of-law rules govern.

"Florida courts apply the 'significant relationship test' to choice-of-law issues arising from tort claims." *Coulter v. ADT Security Servs.*, 744 Fed. Appx. 615, 619 (11th Cir. 2018) (citing *Crowell v. Clay Hyder Trucking Lines, Inc.*, 700 So.2d 120, 122-23 (Fla. Dist. Ct. App. 1997)). "Under this test, the court determines which state has the most significant relationship to the parties and to the alleged tort by considering (1) where the injury occurred, (2) where the conduct causing the injury occurred, (3) the residence of the parties, and (4) where the relationship between the parties is centered." *Id.*

Applying those factors here, the facts establish that Florida has the most significant relationship to the parties and the tort. While Defendant correctly points out that Plaintiff is headquartered in Illinois and the USDOT has field offices in Illinois, both the injury and relevant conduct causing the injury occurred in Florida. Furthermore, the relationship between the parties is centered in Florida, as all material government activity concerning the investigation took place out of the USDOT Miami field office. As such, Florida law will apply.

5

**III.     Negligence Claims (Counts II, III, IV)**

Plaintiff's negligence claims may proceed. The FTCA waives sovereign immunity and authorizes private tort actions against the United States in limited circumstances. *United States v. Olson*, 126 S. Ct. 510, 511 (2005). Indeed, the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The Supreme Court has rejected arguments that government entities do not have liability when performing "uniquely governmental functions" and held that the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.'" *Id.* at 46 (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). Accordingly, the Court must analyze Florida law to determine whether a private person or entity could be held liable in similar circumstances to those alleged here.

"[T]he threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." *In re Marjory Stoneman Douglas High School Shooting FTCA Litig.*, 482 F. Supp. 3d 1273, 1288 (S.D. Fla. 2020) (citing *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005)). "[I]t is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Indian Towing*, 350 U.S. 61, 64-65 (1955). "Thus, in cases where the plaintiff points to the violation of a federal statutory or regulatory duty, we generally look to the applicable state's Good Samaritan doctrine to decide if the plaintiff has alleged a state tort claim that satisfies the § 1346(b)(1) requirement and thereby opens the door for a claim under the FTCA." *Zelaya v. United States,* 781 F.3d 1315, 1325 (11th Cir. 2015).

Under Florida law, there is generally no duty to prevent misconduct by third parties, but there are exceptions to that rule, such as "the undertaking doctrine." *Stoneman Douglas*, 482 F. Supp. 3d at 1289. The common law of Florida has adopted the undertaking doctrine from the Restatement (Second) of Torts, §324A (1965), which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

"Courts analyzing FTCA cases routinely find cognizable duties arising in a wide variety of undertakings by the federal government, following the Second Restatement approach." *Stoneman Douglas*, 482 F. Supp. 3d at 1289-90 (collecting cases). To find that the government has undertaken "to render services to another which he should recognize as necessary for the protection of a third party," the government need not set out to provide services to the particular people injured nor do the third parties need to be known or identifiable at the time of the undertaking. *Id.* at 1290. "Voluntarily undertaking to do an act that if not accomplished with due care might increase the risk of harm to others . . . confers a duty of reasonable care . . . ." *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla. 1996).

In *Stoneman Douglas*, victims of a school shooting sued under the FTCA, alleging that the FBI "failed to comply with its mandatory obligations to handle, investigate, and intervene on tips it received about" the school shooter's plan to attack his high school. 482 F. Supp. 3d at 1276. Prior to 2012, citizens would call their local FBI field office to report tips, and often spoke directly

7

to FBI agents and analysts; the FBI subsequently changed that system and implemented a centralized Public Access Line in its place to intake tips from the public and relay them to agents. *Id.* at 1278. Although the FBI received two tips regarding the school shooter, the agency did not take "the appropriate investigative steps in response to the call" and "the tip never reached the FBI's agents and analysts, including those at the local FBI Field Office in Miami, Florida, where additional investigative steps would have been taken." *Id.* at 1279. After the victims' parents filed suit, the government moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that "Florida law would not impose liability on a private individual in similar circumstances . . . and therefore the United States has not waived its sovereign immunity under the FTCA." *Id*.

The district court denied the motion to dismiss, holding that the government could be held liable under Florida law. *Id*. at 1304. Among other reasons, the court concluded that the FBI had undertaken to render services "as the central repository and conduit for information regarding potential threats to life, and to handle and relay that information to the agency's agents," thereby satisfying the "undertaking" requirement. *Id*. at 1293. The court further found the FBI increased the risk of harm because: 1) one tipster allegedly "forwent additional steps that would have mitigated or prevented the harm" because the tipster relied on the centralized Public Access Line; and 2) had the FBI not set up the Public Access Line, the tips would have gone directly to the field office and had the FBI's Miami-based agents received this information, they would have taken appropriate investigative steps." *Id*. at 1300. Therefore, the plaintiff had adequately alleged a claim that satisfied the first prong of the undertaking test (*i.e.*, an increased risk of harm). *Id.*

The Court believes that, like the FBI in *Stoneman Douglas*, a private individual in like circumstances to the federal agencies here could be held liable under Florida law. Plaintiff alleges that the federal agencies undertook to conduct periodic reviews of some medical examiners to

8

ensure that proper examinations were being conducted, and to remove any medical examiners who failed to meet or maintain the requisite qualifications. (Dkt. 1 at ¶ 77). These regulations were designed to protect the public from harm and thus, the Court accepts as true for purposes of this motion, that the federal agencies should have recognized the undertaking was necessary for the protection of third parties—*e.g.*, employers of truckers subject to medical examinations and motorists who may have been endangered by inadequately examined drivers. (*See id.* at ¶ 47). And the undertaking, if not done with due care, would increase the risk of harm to others, since the federal agencies' failure to adequately perform their reviews or remove unqualified medical examiners would make it more likely that medically dangerous drivers were on the road.

In sum, Plaintiffs have alleged sufficient facts to establish that the federal agencies engaged in a voluntary undertaking. Florida law thus confers on them a duty to act with reasonable care in their handling of the investigation and removal of unqualified medical examiners. *See Hutt*, 670 So. 2d at 67 (collecting cases). Because the Florida undertaking doctrine applies here, Defendant can be held liable and therefore have waived its sovereign immunity under the FTCA.

Defendant cites Florida cases in support of their motion that are distinguishable. *Pollack v. Cruz* discussed the very specific issue of psychiatrists' duty to warn, holding that "[g]iven the unpredictable nature of a mental health patient's future behavior, mental health providers such as [defendant] are not legally tasked with identifying, advising, or warning third parties when the patient has made a general threat to harm others." 296 S0. 3d 453, 459 (Fla. 4th Dist. Ct. App. 2020). *Pollack* relied on *Boynton v. Burglass*, 590 So.2d 446, 450 (Fla. 3d. Dist. Ct. App. 1991)), which found that imposing a duty to warn third parties on psychiatrists "would require the psychiatrist to foresee a harm which may or may not be foreseeable . . . [b]ecause of the inherent difficulties psychiatrists face in predicting a patient's dangerousness." The unpredictability faced

9

by psychiatrists is unlike the scenario presented here, where the federal agencies were allegedly certain by July 2018 that Sherry had been conducting sham medical examinations on an enormous number of truck drivers, thereby creating a significant risk that unqualified drivers were on the road threatening citizens. *Pollack* is not applicable.

Similarly, *Rehabilitation Center at Hollywood Hills, LLC v. Florida Power & Light Co.*, 299 So. 3d 16 (Fla. 4th Dist. App. 2020) is distinguishable from the instant suit. In that case, a resident of a skilled nursing facility sued the defendant electric company for failing to restore power to the nursing facility quickly enough after Hurricane Irma hit South Florida. *Id.* at 18-19. The appeals court affirmed the trial court's decision to dismiss plaintiff's complaint, reasoning that the undertaking doctrine did not make the power company "the insurer of power" and create a duty to "supply[] continuous power to the entirety of South Florida." *Id*. at 22. The Court held that to qualify under the doctrine, the undertaking must be "narrow and specific, not a general obligation to furnish services." *Id.* Defendants argue that the undertaking here, like in *Rehabilitation Center*, is too broad. However, the Court believes the undertaking alleged—periodically performing random spot checks of a certain number of medical examiners and removing those who are not qualified from the registry—is sufficiently narrow and specific and not nearly as generalized as the duty to supply continuous power to a densely populated area of the United States. Accordingly, the motion to dismiss is denied as to Count III for negligence based on a duty to warn.[2]

---

[2] The Court also denies Defendant's motion to dismiss Count II for *respondeat superior* and Count IV for negligence *per se*. Defendant's brief focused on Illinois law only, which as discussed above, is not applicable here. Plaintiff, for its part, did not present *any* argument regarding Counts II and IV in its brief. In the reply brief, Defendant discussed these counts in passing in a footnote. Because neither party has adequately developed arguments under Florida law regarding the viability of Counts II and IV, the claims will not be dismissed. *See Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010) ("[U]nderdeveloped arguments are considered waived").

## IV.    **Indemnification (Count I)**

Plaintiff's indemnification claim will be dismissed. To state a claim for indemnification under Florida law, the plaintiff must allege: 1) its liability is vicarious and solely for the wrong of another, 2) the party against whom indemnification is sought was at fault, and 3) the existence of a special relationship between the parties. *Q.B.E. Ins. Co. v. Jorda Enterprices, Inc.*, Case No. 10-21107-CIV-GOLD/MCALILEY, 2010 WL 11442644, at *2 (S.D. Fla. Aug. 18, 2010) (citations omitted). "A special relationship is one that makes the defendant vicariously, constructively, or derivatively liable for the acts of the party against whom identification is sought," and "courts generally consider whether the party against whom indemnification is sought has breached a duty under a contract with the defendant or breached a duty implied by the parties' conduct." *Id.* (citations omitted). Here, Plaintiff has failed to allege any special relationship between the parties. The relationship between a regulator and a member of the regulated industry is not the type of special relationship considered by Florida courts, and Plaintiff has not alleged a breach of a duty under contract or implied by the parties' conduct. Because Plaintiff has failed to allege an element of an indemnification claim under Florida law, the Court grants the motion to dismiss Count I for indemnification.

## V.    **Contribution (Count V)**

Plaintiff's contribution claim may proceed. Florida's Uniform Contribution Among Tortfeasors Act provides that a right to contribution exists where the parties are "jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death." Fla. Stat. Ann. § 768.31(2)(a). Defendant argues that Plaintiff "has not alleged facts sufficient to demonstrate a viable failure to warn claim by the victims of the crash, any more than it has alleged facts sufficient to establish such a claim on its own behalf." (Dkt. 25 at 15). Not so. As noted

11

above, the Court found that Plaintiff has adequately alleged a failure to warn claim against Defendant. And that analysis applies equally to the victims of the tragic accident in January 2019. The federal agencies engaged in a specific and discrete undertaking to periodically review and remove unqualified medical examiners, and their failure to do so with reasonable care increased the risk of injury to motorists. Obviously, the families of the crash victims believe that Plaintiff was negligent and responsible for the death and injury that occurred and have sued accordingly. The Court finds these allegations sufficiently demonstrate that Plaintiff and Defendant could be jointly and severally liable in tort for the same injury. As such, a contribution claim may be viable under Florida law, and the Court denies the motion to dismiss Count V for contribution.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss [21] is granted in part as to the indemnification claim (Count I) and denied as to the remaining negligence and contribution claims (Counts II, III, IV, V). Defendant is ordered to file an answer to the surviving claims in the complaint within 21 days of entry of this order.

Dated: November 14, 2023                                Enter:

                                                        _____
                                                        LaShonda A. Hunt
                                                        United States District Judge